CHECKER CAB CO. *et al. v.* CITY OF JOHNSON CITY *et al.*

(*Knoxville,* September Term, 1948.)

Opinion filed December 11, 1948.

624

GREEN & BRANDT, of Johnson City, for Checker Cab Co.

NELSON SWAN, of Johnson City, for Diamond Cab Co.

THOS. E. MITCHELL, of Johnson City, for Yellow Cab Co.

J. H. WINSTON, of Johnson City, for City of Johnson City.

PRICE & PRICE, of Johnson City, for V. C. Eades, Jr., and Robert Eades.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

The only question for decision on this appeal is whether the Chanceller erred in adjudging unconstitutional that portion hereinafter referred to of Section 6 of Chapter 32, Private Acts of 1945.

This Private Act regulates in some detail the operation of taxicabs over the streets of Johnson City. An act with approximately the same provisions applicable to City of Elizabethton has recently been sustained. *Large v. City of Elizabethton*, 185 Tenn. 156, 203 S. W. (2d) 907. That act contained a provision identical in substance with Section 6 of the Johnson City Act. However, the party attacking Section 6 of the Elizabethton Act was not adversely affected thereby; therefore, could not be heard, since the alleged invalidity of the portion of the section attacked would not have rendered the remainder of the act invalid. In the case at bar those attacking Section 6 of the Johnson City Act are affected; hence may make the question.

By the second section of the Johnson City Act those legally engaged in operating taxicabs over the streets of Johnson City at the time of the enactment of the act became entitled thereby to continue in business under what is termed a "grandfather certificate".

It is in substance provided by Section 6 that with the exception of those entitled to a grandfather certificate, Johnson City is prohibited from issuing a certificate of public convenience and necessity to any one for the operation of taxicabs in Johnson City until (1) after a public hearing upon notice, and (2) a finding thereon of the need for additional taxi service in the city, and (3), in the event of such finding, "the taxicab operators then operating within said municipality shall be given a reasonable time, not more than sixty (60) days to provide such additional service, before any new certificate is granted to some other person".

Notwithstanding the third requirement of Section 6, Johnson City in January of 1948, after the required public hearing, and after a finding of need for additional taxi service, granted a certificate to a new operator, Radio Cab Co., without giving the three operators who held grandfather certificates an opportunity to provide the additional service found necessary. Thereupon, these three grandfather certificate operators sought by this bill in Chancery to prevent the Radio Cab Co. from operating cabs in the city, it being asserted in their bill that the granting of a certificate to Radio Cab Co. was a violation of the third provision of Section 6 of the Act, and in violation of their rights under Section 6 to furnish this additional taxi service, if they desired to do so.

Johnson City and Radio Cab Co. demurred to this bill on the ground that Article 1, Section 22 of our State

Constitution is violated by that part of Section 6 of the Johnson City Act providing that in the event of need for additional taxi service, ''the taxicab operators then operating within said municipality shall be given a reasonable time . . . to provide such additional service, before any new certificate is granted to some other person.''

The provision of Article 1, Section 22 of our State Constitution is that

''monopolies are contrary to the genius of a free State, and shall not be allowed.''

The Chancellor wrote a very excellent opinion, wherein he thoroughly reviewed the question and the authorities, and sustained the demurrer. A decree to that effect, and dismissing the bill was entered, and this appeal allowed the three taxi operators who held grandfather certificates.

The monopoly of the taxi business in Johnson City granted to the appellants by the hereinabove quoted portion of Section 6 of this Private Act is just about as exclusive and complete as may be conceived. These appellants contend, however, that the exclusive privilege granted them is not the monopoly to which the anti-monopoly clause of our constitution refers, because the granting of this exclusive privilege to these three appellants by the Legislature was an act done in the exercise of the police power of the State.

■ The operation of taxicabs over the streets of a municipality is a matter which materially concerns the safety and welfare of all its people. It may, therefore, be regulated by the legislature in the exercise of the police power of the State. *City of Chattanooga* v. *Jackson*, 172 Tenn. 264, 111 S. W. (2d) 1026; *Large* v. *City of Elizabethton, supra; Spoone* v. *Mayor & Aldermen of Town of Morristown,* 185 Tenn. 454, 206 S. W. 2d 422.

■ It is settled law that the anti-monopoly clause of our constitution does not prohibit the legislature from granting a monopoly, in so far as such monopoly has a reasonable tendency to aid in the promotion of the health, safety, morals and well being of the people. *Leeper* v. *State*, 103 Tenn. 500, 53 S. W. 962, 48 L. R. A. 167, and *Noe* v. *Mayor and Aldermen of Town of Morristown*, 128 Tenn. 350, 161 S. W. 485, Ann. Cas. 1915C, 241, are illustrations of this rule.

■ On the other hand, a monopoly cannot be validly created merely by connecting such creation with the exercise of a police power. The text of 36 American Jurisprudence, page 524, citing numerous authorities, states the general rule to be that in the exercise of the police power there may not be constitutionally created monopolies "which have no legitimate relation to the public purposes sought to be accomplished" and in the absence of such legitimate relation is "void as being unreasonable, oppressive, and ultra vires". It is further well stated there that "the power in a municipal corporation to license or regulate a useful trade does not carry the implied authority to . . . create a monopoly therein", citing many authorities.

It was in accordance with this general rule that this Court in *Noe* v. *Mayor and Aldermen of Town of Morristown, supra*, 128 Tenn. at page 359, 161 S. W. at page 487, Ann. Cas. 1915C, 241, said by quoting with approval from another authority that:

"Where that body has made the necessary regulations required for the health or comfort of the inhabitants, all persons inclined to pursue such an occupation should have an opportunity of conforming to such regulations; otherwise, the ordinance would be unreasonable and tend to oppression."

■■■ Of course, if the monopoly created has a legitimate relation to the public purpose sought to be accomplished in the exercise of the police power, then a Court is without authority to determine such monopoly invalid on the theory that it thinks some other method would have accomplished the purpose sought. In such a situation the matter is exclusively a legislative prerogative. On the other hand, it is the duty of the Court to determine whether the monopoly does have any legitimate relation with the declared public purpose of the act. Otherwise, legislative bodies could violate the anti-monopoly provision of the constitution with impunity by the simple process of declaring the creation of the monopoly an act done in furtherance of the exercise of a police power. The authority and duty of the Court within the premises is stated by this Court in *Motlow* v. *State*, 125 Tenn. 547, 590, 145 S. W. 177, 188, L. R. A. 1916F, 177 as follows:

"The courts decide merely whether it has any real tendency to carry into effect the purposes designed—that is, the protection of the public safety, the public health, or the public morals—and whether that is really the end had in view."

■■■ We have sought in vain to discover some legitimate relation between the public purpose sought by this act to be accomplished and its provision that only those who were in the taxi business in Johnson City at the time of the enactment of this act or those in business at a given time shall be permitted to engage in that city in this business so long as those favored few desire to prevent the entry of another. Our necessary conclusion is that the monopoly in question has no real tendency to carry into effect the public purpose for which the act was en-

acted, to-wit, the regulation of the operation of taxicabs over the streets of Johnson City, and that the provision of section 6 providing that upon the finding of need for additional taxi service "the taxicab operators then operating within said municipality shall be given a reasonable time, not more than sixty (60) days, to provide such additional service, before any new certificate is granted to some other person", is unconstitutional because it violates the anti-monopoly clause of our constitution.

The only case which we have been able to find that decides the identical question upon practically the identical statute is the Arkansas case of *North Little Rock Transportation Co.* v. *City of North Little Rock* referred to by the Chancellor in his opinion, and reported in 207 Ark. 976, 184 S. W. (2d) 52, 55, 159 A. L. R. 813. The Court in holding the monopoly provision of that act (identical with the one in Johnson City Act) unconstitutional said:

"Merely because taxicabs might be called public carriers does not merge the fundamental difference that it is one thing to regulate and tax a public carrier, and yet another thing to grant it a monopoly in the teeth of the constitutional inhibition".

The decree of the Chancellor is affirmed with costs adjudged against appellants.

All concur.