### COLEMAN v. CITY OF PENSACOLA, et al.

Circuit Court, Escambia County.

October 29, 1959.

William R. Davenport, Pensacola, for plaintiff.

F. Churchill Mellen, City Attorney, for City of Pensacola.

David H. Levin, Levin & Askew, Pensacola, for defendant Newman.

L. L. FABISINSKI, Circuit Judge.

This cause came on to be heard on final hearing, and was argued by counsel for the parties, the parties having stipulated in writing to the pertinent facts, which stipulation is a matter of record in this cause.

On May 8th, 1958, the City Council of the City of Pensacola adopted an ordinance granting to the defendant F. Jack Newman a "franchise" for a period of five years, of the right to maintain ambulances for the transportation of injured, sick and invalid persons upon the roadways, streets, avenues and thoroughfares of the city of Pensacola. The franchise was exclusive in nature. The occasion for this unusual exercise of its power is recited in the preamble, and elaborated upon in the stipulation. In brief the ordinance recites that no other person or agency in the city of Pensacola was willing to undertake the operation of public ambulances, and those who had theretofore rendered such service had announced that after October 15, 1956 they would discontinue all such service in the city.

Plaintiff Coleman admits that he had knowledge of the predicament of the city, knows that the city authorities were seeking some responsible person or agency to undertake such services, knew of the hearings had in connection with the problem, and makes no claim that he was deprived of any opportunity to bid on such service or to offer to fill the public need in this regard. However, he did, on or about October 22, 1956, apply for a license to operate an ambulance service, but such license was denied him, the city giving as the reason for such denial that the city was committed, as of October 15, 1956, to the granting of an exclusive franchise to the defendant F. Jack Newman.

Nevertheless plaintiff purchased two ambulances, and, operating from a place of business outside the city limits, attempted to render ambulance service to the citizens of Escambia County, both within and without the city limits. He was arrested several times as a result, and alleges that he was threatened with continuous arrests so long as he attempted to render ambulance service in Pensacola in competition with defendant Newman.

Defendant Newman operated an ambulance service in Pensacola continuously under the franchise, except for a short interval, when, through misunderstanding of a business nature, he was deprived of liability insurance for about 24 hours before the misunderstanding could be corrected. He maintained his place of business in the city of Pensacola until just before final hearing of this litigation, when he removed his place of business to a point outside the city limits. This necessitated an amendment of the ordinance, which had stipulated that the ordinance should be applicable only to ambulance companies *with places of business in Pensacola.*

At an earlier stage of the case the court granted a temporary restraining order, enjoining the city from enforcing the ordinance in those instances where plaintiff used the streets of the city to transport a person from a point outside the city to a hospital within the city limits, or to transport under a previous contract of carriage persons formerly serviced by him into the city, from a point in Pensacola to a point outside the city limits of Pensacola.

The only question seriously argued or made an issue in this case is the power of the City of Pensacola to discriminate between persons desiring to conduct an ambulance service, so as to give an exclusive right to one such person in preference to another, or in other words, to transform the ambulance service of Pensacola into a public utility, and grant a monopoly to one person to perform such services in the city limits of Pensacola.

Counsel and the court have exhausted the authorities and no case directly in point has been decided, so far as we have been able to learn, anywhere in the United States. The case most heavily relied upon by the defendants is that of Daly v. Stokell, decided by the Supreme Court of Florida March 13, 1953, and reported in 63 So. 2d Series, at page 644. In that case the City of Ft. Lauderdale entered into a contract of similar nature granting an exclusive right for five years to a private individual to keep streets clear of wrecks, derelicts and other impediments to traffic—but there was an exception in the contract which gave the owner of such wrecked vehicle the opportunity to request that it be removed by some other towing company. The court did not attempt to determine whether a complete monopoly of such service would be lawful.

Overlooked in argument, and of uncertain significance, is chapter 24806, Acts of the Florida Legislature of 1947, a local act authorizing the City of Pensacola to regulate firms, corporations and auto transportation companies operating motor vehicles, other than taxicabs, engaged in the business of transporting passengers within the corporate limits of the city and adjoining suburban territory within ten miles from the corporate limits. In City of Pensacola v. King, 47 So. 2d 317, this act was held unconstitutional.

In State ex rel. Fohl v. Karel, Sheriff, 180 So. 3, the Supreme Court of Florida, in rather unanimous agreement with other jurisdictions, stated, in regard to the distinction between regulation of automobiles used by private individuals and those using streets and highways for private gain, at page 6, end of first complete paragraph—"but as to the latter, its power is broader. The right may be wholly denied, or it may be permitted to some and denied to others, because of its extraordinary nature. This distinction, elementary and fundamental in character, is recognized by all the authorities."

As the court understands the purport and effect of the ordinance, it was not based arbitrarily upon the police powers of the city, as such, but as a measure to forestall an imminent emergency, ostensibly for the benefit of the public, based upon the powers of the city to protect the public health, safety and welfare. It has been said that no fixed or rigid rule can be made to apply to measures so enacted, but that each case must be measured by the exigencies which exist and are urged to justify action taken by municipal authorities. See General Alarm, Inc. v. Underdown (Ariz.), 262 Pac. 2d 671, headnotes 2 and 3, and text thereunder; and Checker Cab Co. v. City of Johnson City (Tenn.), 216 S.W. 2d 335.

The evidence is uncontradicted that unless measures were taken to meet the situation, on October 15, 1956 all ambulance service in Pensacola would be discontinued. The city was faced with the necessity of either supplying such services itself, or persuading some private agency to undertake the service. Much publicity was given to the situation in the news columns of the public press, several hearings, formal and informal, were held, but no local agency offered to supply the service. Agencies from several surrounding cities offered to undertake to give such service if given exclusive privileges, and the defendant, F. Jack Newman, a citizen of Mobile, was selected as the most promising. He was given informal assurances of an exclusive franchise, which were formalized in the ordinance more than six months later. On October 15th, 1956, he commenced operations in the city of Pensacola.

Another circumstance, not in evidence, but of which the court may take judicial notice, is that formerly, with some six companies

operating ambulances, their competitive attempts to be the first to reach the scene of automobile collisions and other catastrophes, had caused serious problems to arise in the effort to control traffic. In that respect the comments by the court in Daley v. Stokell, supra, are applicable here.

Actually it may not be necessary to determine in the instant case whether the city did, or did not, act in a constitutional manner in adopting the ordinance attacked. An important question involved is whether the plaintiff is in a position to question its adoption. The plaintiff is not a resident citizen of Pensacola. Incidentally neither is the defendant Newman. Plaintiff stood by silently when the negotiations between the city and interested agencies were going on, and made no effort to offer himself as an operator of ambulance services in the emergency existing at the time. He attempted to enter the field with full knowledge of the action taken by the city— at that time not even formalized by ordinance. He stood by while defendant Newman at considerable expense procured the equipment necessary to qualify himself to carry out the contract. Defendant has in good faith carried out the contract entered into for a period of almost three years. The city has ample cause to fear that unrestrained competition will reappear if the field is again opened to all comers. It is certainly debatable whether the plaintiff is not estopped from questioning the propriety and validity of the ordinance.

But the question involved is of such consequence that the constitutionality of the action of the city should not be left in doubt. Merely because the situation is novel in the sense that no decided cases are available which directly bear upon the instrumentalities affected, is in no sense decisive of the question raised.

While the transportation involved does not occur between fixed termini the type of service rendered by the defendant Newman bears many resemblances to the operations of carriers of passengers generally. Under the contract he is required to render service to all who apply, the rates of carriage are fixed by the contract, the type of service is carefully regulated for the health, safety and welfare of the passengers. In the nature of this type of transportation the vehicles used cannot travel over a fixed and predetermined route, but it does commence at the place of business of the operator, and ends at one of the hospitals of the community, only one of which is within the city limits—or, when taking a passenger from a hospital, in reverse order. That the service is one of public convenience and necessity cannot be questioned. If no private agency were available, a city of the importance of Pensacola would of necessity be compelled to supply a like service as a public service. The control of

traffic is made much easier as a result of the use of one service rather than two or more competitive services. It needs no great elasticity of imagination to class such services as a public utility.

In the last resort, the question to be decided is whether an unlawful discrimination is being practiced against the plaintiff. In deciding this question, it may well be asked whether the city may be prohibited from restraining one who is neither a resident or taxpayer of the city from conducting his business upon the streets of the city of Pensacola, from servicing customers within the city, from operating his vehicles as emergency vehicles upon city streets under the more liberal traffic regulations pertaining to such vehicles, and from competing with a favored operator rendering a public service under circumstances which the city has found as a fact to be unprofitable in competition with others. Permitting transportation facilities to operate over fixed routes with consequent preferential treatment against cutthroat competition is such common practice, and so universally recognized to be permissible under the well-known device of certificates of convenience and necessity, as to need no citation of authorities. It is only a short step to holding that a contract analogous to a certificate of public convenience and necessity may be lawfully entered into even though it results in a monopoly in a particular case within the boundaries of a municipality. Certainly this should be true when it conclusively appears that the contract is one sought by the municipality rather than by the operator, and is shown to be in good faith and not a demonstration of favoritism towards a particular individual.

The primary consideration in the determination as to whether a particular franchise is discriminatory is that of public convenience, welfare and necessity. The rights of a particular individual who desires to use the streets of a municipality for his personal gain and profit are secondary to the public good. It seems to the court that the plaintiff must establish not that his personal welfare is deleteriously affected by exclusion, but that the public convenience and welfare will best be served by a destruction of the monopoly created by such a franchise. This the plaintiff has wholly failed to establish.

A wide field remains to the plaintiff in which he can operate with reasonable prospects of profit to himself. Two of the three hospitals serving Pensacola are outside the city limits, and the plaintiff cannot be prohibited from serving Escambia County outside the city limits in his business as an operator of ambulances, and he may reach these two hospitals without entering upon the city streets. He is permitted under the restraining order of the court already entered to carry passengers from outside the boundaries of Pensa-

cola to the single hospital within the city limits. He is permitted, under a contract previously made, to enter the city of Pensacola to carry passengers from Pensacola to a point outside the city, if their entry was accomplished by him. If he cannot profitably operate under these circumstances, it is difficult to see how two operators of ambulances can successfully compete for the business available within the city limits. And it is a matter of great importance to the city that at least one such operation be carried on to serve the residents of the city—under circumstances which make it reasonably possible for one to operate at a profit.

It is the opinion of the court that beyond the relief already granted, the prayer of the bill should be denied. A suitable decree may be prepared for submission to the court. Costs will be paid by defendant, since some relief was necessary under the bill.