**NASHVILLE MOBILPHONE COMPANY, INC., Appellant,**

v.

**Z. D. ATKINS et al., Appellees.**

Supreme Court of Tennessee.

April 19, 1976.

---

James Clarence Evans, Farris, Evans & Warfield, John R. Reynolds, Nashville, for appellant.

Roland M. Lowell, Robert L. Baker, Nashville, for Mobilphone Systems, Inc.

Eugene W. Ward, Gen. Counsel, Nashville, for Public Service Commission.

## OPINION

HENRY, Justice.

This action involves an interpretation of the State Radio Common Carrier Act as set forth in § 65–3011, et seq., T.C.A. More particularly we are concerned with the construction of § 65–3004(f).

### I.

Nashville Mobilphone Company, Inc. is a radio common carrier providing mobile telephone service in Davidson and certain adjoining counties in Tennessee. It operates under a certificate of convenience and necessity issued in 1964 and various supplemental certificates issued thereafter.

On April 5, 1973, Mobilphone Systems, Inc. filed its application with the Public Service Commission seeking a certificate of convenience and necessity authorizing it to operate within the service area of a proposed base station in Nashville. Nashville

Mobilphone was served with notice and protested; a hearing was held on May 29, 1973; and the Commission granted the authority.

Nashville Mobilphone filed its petition for certiorari in the Chancery Court at Nashville. The Chancellor upheld the Public Service Commission and this appeal ensued.

## II.

Appellant charges the Chancellor with error in his interpretation of § 65–3004(f) T.C.A., and his holding that the notice requirement of this section was satisfied by the notice given to Nashville Mobilphone pursuant to § 65–3004(c). The Chancellor is further charged with error in failing to hold that the Commission was required under § 65–3004(f), as a condition precedent to the issuance of the license, to find that Nashville Mobilphone, after notice to provide reasonably adequate service, and after hearing pursuant to such notice, had failed or refused or neglected to do so.

We first look to the pertinent findings actually made by the Public Service Commission:

> (1) that the service of the presently certificated radio common carrier is inadequate to meet the reasonable needs of the public in Nashville, Tennessee;
> (2) that the testimony of witnesses at the hearing conducted on reasonable notice affirmatively shows that the present certificated radio common carrier in Nashville, Tennessee is unable to or refuses or neglects to provide reasonably adequate service.

It will be noted that these findings track § 65–3004(f)

The Chancellor held that there was ample material evidence to support the findings of the Commission and dismissed the petition for certiorari. In a Memorandum Opinion he noted petitioner's insistence that "the statute requires notice to provide the service", and, in response thereto, held:

> The Court finds that the notice of the May 29th, 1973, hearing coupled with the application was sufficient to notify the plaintiff that 'adequacy of its service'

would be an issue at the hearing and therefore met the notice requirement of the statute.

## III.

We now proceed to an analysis of the State Radio Common Carrier Act.

Section 65–3002 contains a declaration of public policy, in pertinent part, as follows:

> . . . it is hereby declared to be the policy of this state to provide fair regulation of such carriers in the interest of the public, to promote adequate, economical and efficient radio common carrier service . . .; to provide just and reasonable rates and charges for radio common carrier services without unjust discrimination, undue preferences or advantages, or unfair or *destructive competitive practices* . . . .

Section 65–3004 governs application for certificates of convenience and necessity. Subsection (c) provides in pertinent part that upon the filing of the application the commission "shall cause notice thereof to be given to holder of an existing certificate in the affected territory."

Subsection (f) provides:

> The commission shall not grant a certificate for a proposed radio common carrier operation or extension thereof into the established service area which will be in competition with or duplication of any other certificated radio common carrier unless it shall *first* determine that the existing service is inadequate to meet the reasonable needs of the public and that the person, firm or corporation operating the same is unable to or refuses or neglects after hearing on reasonable notice to provide reasonably adequate service. (emphasis supplied).

This unduly long sentence is badly worded and is completely devoid of sorely needed punctuation. A portion of the sentence is clear; a portion ambiguous.

■ It is clear that the Legislature intended to guard against "unfair or destructive competitive practices" in accordance with the declared public policy. It is clear

that an established service area served by an existing carrier is to be accorded a measure of protection against competition and duplication of services in accordance with the declared public policy. Certificates for a new carrier are not to be granted where the result would be a duplication of services, unless certain conditions are found to exist.

It is clear that this section was designed to prevent ruinous competition, duplication of services and waste, thereby insuring that the consuming public would be the beneficiary of adequate and efficient service. In order to accomplish these praiseworthy public purposes, this section provides that as a condition precedent to the issuance of the certificate, the Commission must first "determine that the existing service is inadequate to meet the reasonable needs of the public."

■ Absent such a finding the certificate may not issue. Phrasing the matter another way this section guarantees to the existing certificate holder the exclusive right to operate in the established service area so long as the existing service is adequate to meet the reasonable needs of the public. Upon such a finding the applicant is foreclosed.

It is at this point that the ambiguity begins. The sentence is phrased in the conjunctive at this juncture. There must be a finding that the existing service is inadequate to meet the reasonable needs of the public *and*:

that the [existing carrier] is *unable to or refuses or neglects* after hearing on reasonable notice to provide reasonably adequate service.

It is this phraseology that creates the ambiguity.

Nashville Mobilphone insists:

The Commission must give an existing radio common carrier notice to provide reasonably adequate service and find thereafter that it was unable to, or refused, or neglected so to do, before a duplicating certificate can be granted in its established service area.

Counsel argues in brief and at the bar of this Court that the statute contemplates two notices, i. e., (1) under subsection (c), that an application has been filed and (2) notice, under subsection (f), to the existing facility to provide reasonably adequate service.

Mobilphone Systems and the Public Service Commission assert that "[t]he Commission has interpreted the statute to require one notice that an application has been filed alleging that existing service is inadequate."

We have examined the State Radio Common Carrier Act in the light of its language, the declared legislative objectives and the respective insistences of the parties to this action.

We think the overall purpose of the act is to protect the public interest by insuring adequate, efficient and economical radio common carrier service. To this end the act is designed to prevent destructive competitive practices. It is implicit in the context of the statute that the operators of an existing facility must have some reasonable assurance that they may expend money, time and effort in the installation, maintenance, improvement and extension of their facilities in order to provide economical and efficient service without the intrusion into their service area of competing carriers. In short, the statute creates a regulated monopoly. This is particularly evident from the wording of subsection (f) wherein the Legislature declared in the most precise and exacting manner that no certificate would be granted for operation "into the established service area which will be in *competition with* or *duplication of* any other certificated radio common carrier" unless certain criteria are met. (emphasis supplied).

■ We think the statute contemplates the following sequence of events when a prospective competing carrier applies for a certificate.

*First*, the Commission fixes the time and place of hearing and gives notice to the holder of the existing certificate.

*Second*, a hearing is conducted at which the sole issue is the adequacy of the existing service. This, of course, is an adversary proceeding.

If, as a result of this hearing, the Commission determines the existing service to be adequate, this concludes the matter and the application will be denied.

If the Commission determines that the service is inadequate to meet the reasonable needs of the public then it must give notice to the existing carrier, under subsection (f), to provide reasonably adequate service. A reasonable time limit should be fixed, appropriate investigations should be made by the Commission, and a date certain should be fixed for a hearing at which the sole issue is compliance with the Commission's order. If the Commission determines that there has been compliance and the service being rendered is reasonably adequate, the application of the prospective carrier will be denied.

If, after this second hearing the Commission determines that there has not been compliance with its directive, it should re-evaluate the entitlement of the existing carrier to continue to operate, and should proceed at a third hearing to determine "the suitability of the applicant, the financial responsibility of the applicant, the ability of the applicant to perform efficiently the service for which authority is requested", in accordance with subsection (e) of Section 65–3004.

In appropriate cases the Commission may, at a single hearing, determine the adequacy of the existing service and the suitability of the applicant, but it is essential that the Commission determine that the existing service is inadequate, prior to making any finding as to the suitability of the applicant.

## IV.

We deal with a relatively new act. We are not cited to a similar enactment in any other state; however, our investigation reveals that Georgia and Louisiana have substantially the same statutes.

Georgia's Radio Utility Act is contained in § 93–901, *et seq.*, Georgia Code Annotated. The Georgia law, however, contains no declaration of public policy. Section 93–911 is virtually identical with § 65–3004(f), T.C.A. We find no case construing the Georgia Act.

Louisiana's statutory scheme for the regulation of Radio Common Carriers is contained in § 45–1500, et seq. LSA. § 45–1503 is virtually a carbon copy of § 65–3004(f) T.C.A.

The Louisiana statute was construed in *Communications Ind., Inc. v. Louisiana Pub. Serv. Comm'n.*, 260 La. 1, 254 So.2d 613 (1971). The issues and insistences parallel those presented in the instant case. In holding that the Louisiana statute required only one hearing, the Court said:

> Manifestly, the statutory purposes are to provide efficient service in radio-telephone communications and to preserve procedural fairness in the administration of the certificates.
>
> The one-hearing construction advances both of these objectives, while the two-hearing construction does not.
>
> It is unlikely that a Certificate applicant would expend the money necessary to set up an operation and marshal the legal and technical assistance to show that the existing service is inadequate if the outcome would always be only a second chance for the established operator. Such a procedure would defeat rather than regulate competition.
>
> It seems clear that the delays inherent in a two-hearing procedure would frustrate legitimate consumer interest in the swift correction of inadequate service.
>
> Procedural fairness, a compelling consideration, lends no support to the two-hearing theory. So long as reasonable notice is coupled with a reasonable opportunity to be heard, such fairness is assured.
>
> We construe the statute to require one hearing upon reasonable notice. . . .
> 254 So.2d at 615.

We do not agree with the reasoning of the Louisiana Court with respect to the likelihood of an applicant expending "the

money necessary to set up an operation and marshal the legal and technical assistance to show that the existing service is inadequate if the outcome would always be only a second chance for the established operator." This is just a hazard of the game when one man seeks to play on the field of another.

■ This argument goes to the *merits and desirability* of the statute, a matter with which this Court officially has no legitimate concern. We do not second guess the Legislature. It is privileged to pass good laws, mediocre laws or poor laws. Our scrutiny is solely directed to their constitutionality. We take them as we find them and have neither the duty, nor the disposition, nor the inclination, nor the power to modify or mold them so as to meet our view of their merit.

### V.

The Public Service Commission and Mobilphone make two other insistences that we think deserve comment.

■ First they insist that the Public Service Commission has interpreted subsection (f) and, citing authorities, they urge upon us the general rule that weight and importance are given by the Tennessee courts to the interpretation of the agency charged with the enforcement or administration of a particular act. We agree that such an interpretation is entitled to consideration and respect and should be awarded appropriate weight, and this is particularly true in the interpretation of doubtful or ambiguous statutes. But administrative interpretation is not controlling and the ultimate determination addresses itself to the courts. Where the court determines that "such construction is erroneous" it will be "impelled to depart from it." *Collins v. McCanless*, 179 Tenn. 656, 665, 169 S.W.2d 850, 853 (1943). Moreover, this is a relatively new statute and we do not deal with a long established administrative construction.

■ Appellees make the further insistence that § 65–3002 T.C.A. prohibits "an *undue* preference." So it does, but the act in its entirety must be construed to create a preference in favor of the existing facility so long as it renders adequate service. But, they insist that such an interpretation would create a monopoly in violation of Title 15, Section 2, United States Code, and Article 1, Section 22 of the Tennessee Constitution.

These insistences are not briefed but appear only as a conclusory statement in appellee's reply brief. We, therefore, do not consider it necessary or desirable to prolong this opinion with a dissertation on these unbriefed insistences. Suffice it to say that by their very nature and because of the character of their operations, most public utilities are regulated monopolies. None enjoy continuing exclusivity and all are regulated in the public interest and enjoined to meet the public need. All operate with the certain knowledge that their continuation demands the rendition of adequate service under a continuing contingency of loss of operating authority.

In *Checker Cab Co. v. Johnson City*, 187 Tenn. 622, 216 S.W.2d 335 (1948) this Court declared:

> It is settled law that the antimonopoly clause of our constitution does not prohibit the legislature from granting a monopoly, in so far as such monopoly has a reasonable tendency to aid in the promotion of the health, safety, morals and well being of the people. 187 Tenn. at 627, 216 S.W.2d at 337.

We hold that the Tennessee State Radio Common Carrier Act, as incorporated in § 65–3001 et seq., T.C.A., does not violate the anti-monopoly clause of the Constitution of Tennessee as contained in Article 1, Sec. 22 of that document, nor is it offensive to title 15, Section 2, United States Code.

### VI.

The Public Service Commission's Hearing Examiner, the Commission itself and the Chancellor have found as a fact that Nashville Mobilphone's service is inadequate to meet the reasonable needs of the public in

Nashville, Tennessee. We will not disturb that finding; let it become the law of the case.

The Commission having made the determination of inadequacy, must now give Nashville Mobilphone notice to provide reasonably adequate service and pursue the procedure hereinabove outlined.

We reverse the Chancellor and remand to the Public Service Commission.

FONES, C. J., and COOPER, BROCK and HARBISON, JJ., concur.