**STATE of Tennessee, Plaintiff-Appellee,**

v.

**John A. SPANN, III,
Defendant-Appellant.**

Supreme Court of Tennessee.

Nov. 9, 1981.

Richard L. Dugger, Nashville, for defendant-appellant.

John C. Zimmermann, Asst. Atty. Gen., of counsel, William M. Leech, Jr., Atty. Gen., Nashville, of counsel, for plaintiff-appellee.

## OPINION

HARBISON, Chief Justice.

The sole issue presented in this case is the constitutionality of T.C.A. §§ 39–4101 to 4103 which prohibit the "scalping" of admission tickets to public events. The trial judge sustained the validity of the statutes. We affirm his decision.

Appellant entered a plea of nolo contendere to a charge of offering to sell tickets for certain games of the National Collegiate Athletic Association basketball tournament in 1980. Appellant had purchased twenty tickets for the final games of the regional and national tournaments. The admission charge shown on the face of these tickets was sixteen dollars for the regional finals and thirty dollars for the national finals. Appellant offered to sell at a price of seventy-five dollars for each regional ticket and two-hundred fifty dollars for the national finals, allowing him to make a profit of fifty-nine dollars on regional tickets and two hundred twenty dollars on tickets to the national finals.

Enacted as Tennessee Public Acts 1947, ch. 103, the statutes in pertinent part provide as follows:

"39–4101. *Scalping admission tickets—Penalty.*—It is unlawful for any person to scalp an admission ticket, pass or admission card to any theater, auditorium, stadium, dance hall, rink, athletic field or any other place to which tickets, passes or admission cards are required as a condition upon admittance thereto; or to offer or to attempt to scalp any such admission ticket, pass or admission card. . . .

"39–4102. *Term 'scalp admission tickets' defined.*—As used in § 39–4101, the term 'scalp admission tickets' means to sell any ticket, pass or admission card at a price above the price printed thereon or, if no price be printed thereon, to sell such ticket, pass or admission card at a price higher than the standard retail price for which such ticket, pass or admission card was issued or offered for sale by the promoter, managers, operators or owners of any theater, auditorium, stadium, dance hall, rink, athletic field or any other place to which tickets, passes or admission cards are required as a condition upon admittance thereto."

In pleading to the charges, appellant reserved the right to appeal and to challenge the constitutionality of these statutes, with the consent of the District Attorney and of

the trial judge. Rules 11(e) and 37(b)(2), Tennessee Rules of Criminal Procedure.

Appellant insists that the statutory prohibition upon the resale for profit of tickets to public events is violative of the due process clauses of both the state and the federal constitutions.

While there is limited authority to support the contention of appellant,[1] the weight of authority is to the contrary. *See Gold v. DiCarlo*, 235 F.Supp. 817 (S.D.N.Y. 1964), *aff'd*, 380 U.S. 520, 85 S.Ct. 1332, 14 L.Ed.2d 266 (1965); *People v. Patton*, 57 Ill.2d 43, 309 N.E.2d 572 (1974); Annot., 81 A.L.R.3d 655 (1977).

Appellant concedes that in light of the cases just cited, the state in the exercise of its police power may reasonably regulate the sale of admission tickets to public events, including the placing of a limit upon the amount of any profit received or premium charged. He insists, however, that the state may not totally prohibit resale at a price in excess of that shown on the face of the ticket.

 This, in our opinion, is a fallacious argument. The statute in question does not, of course, prohibit the resale of a ticket at all. It does, however, prohibit such resale for a premium or a profit, and we believe that this is a regulation which is entirely reasonable and within the police power of the General Assembly. There was no evidentiary record developed in the present case, but ticket "scalping" and the abuses attendant thereon in connection with admissions to public events have long been the subject of regulation by legislative bodies. Only public events are involved, and appellant concedes that there is a legitimate public interest in the regulation of such events and in enabling all members of the public desiring to attend such events to have an equal and fair opportunity to obtain admission tickets. The statutes in question are reasonably related to that legitimate legislative objective and, in our opinion, fall well within the police power of

the state. *See Nebbia v. New York*, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934); *cf. State v. Smith*, 618 S.W.2d 474 (Tenn. 1981).

Appellant insists that the statutes unreasonably interfere with private property rights and the conduct of legitimate private enterprise for profit. Where, however, the subject is one related to the health, safety, morals or welfare of the public generally, legislative bodies may reasonably regulate activity which otherwise would fall entirely into the private sphere. *See Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963).

The judgment of the trial court is affirmed at the cost of appellant. The cause is remanded to that court for entry of any further orders which may be necessary.

FONES, COOPER, BROCK and DROWOTA, JJ., concur.

---

1. *E. g., Estell v. City of Birmingham*, 291 Ala. 680, 286 So.2d 872 (1973); *Kirtley v. State*, 227 Ind. 175, 84 N.E.2d 712 (1949).