**DIAL–A–PAGE, INC., Petitioner,**

**v.**

**Keith BISSELL, Chairman, Frank D. Cochran, Commissioner, and Steve Hewlett, Commissioner, Constituting the Tennessee Public Service Commission; A–1 Communications, Inc.; U.S. Central, Inc.; McCaw Paging, One, Inc.; Deadrick Paging Company, Inc.; Jackson Mobilephone, Inc.; Dial Page, L.P.; Mobilcomm of Memphis, Inc.; Telepage of Nashville, Inc., Lebanon Mobile Phone, Inc.; Telpage of Tennessee, Inc.; and South Central Bell Telephone Company, Respondents.**

Court of Appeals of Tennessee,
Western Section, at Nashville.

June 5, 1991.

Permission to Appeal Denied by
Supreme Court Sept. 23, 1991.

Val Sanford and Todd J. Cambell, Nashville, for petitioner, Dial–A–Page, Inc.

J. Clarence Evans, Nashville, for respondent, Jackson MobilePhone, Inc.

Jess D. Campbell, Knoxville, for respondent, Deadrick Paging Co., Inc.

Charles W. Burson and Pamela Bingham Broussard, Nashville, for respondent Tenn. Public Service Com'n.

Roland M. Lowell, and D. Randall Mantooth, Nashville, for respondent Dial Page, L.P.

Raymond Whiteaker, Nashville, for respondent South Cent. Bell Tel. Co.

T.G. Pappas, Nashville, for respondents Mobilecomm of Memphis, Inc., Telepage of Nashville, Inc., Lebanon MobilePhone, Inc., and Telepage of Tennessee, Inc.

HIGHERS, Judge.

Dial–A–Page, Inc. brings this appeal seeking the reversal of an order by the Tennessee Public Service Commission (Commission) issued in response to a motion for a declaratory ruling regarding the Commission's interpretation of T.C.A. § 65–30–105 of the Tennessee Radio Common Carrier Act (RCC Act). The Commission stated in its order of May 23, 1990 that pursuant to the RCC Act, only one applicant can obtain authority to operate as a radio common carrier (RCC) in a given market at one time. It is from this order that Dial–A–Page appeals asserting that the Commission misinterpreted the RCC Act and the RCC Act as interpreted by the Commission is unconstitutional.

The facts relevant to this appeal began in 1988 when BellSouth Corporation (BellSouth) merged with Mobile Communications Corporation of America (MCCA) and thereby acquired MCCA's paging operations which included four RCCs servicing Tennessee. MCCA is a Delaware corporation and one of the nation's largest RCCs. The four MCCA RCCs licensed in Tennessee are regulated by the Commission pursuant to the RCC Act, T.C.A. §§ 65–30–101, *et seq.* The four RCCs are generally located in three separate markets: one in Memphis, two in Nashville, and one in Chattanooga. BellSouth is a Georgia corporation and it owns the land line telephone company which is also capable of providing paging services in the three markets involved. BellSouth is not subject to regulation by the Commission because the RCC Act does not govern land line operations. Pursuant to a joint petition by MCCA and BellSouth, the Commission approved the transfer to BellSouth of control of the four Tennessee RCCs certificates of public convenience and necessity. In its order, the Commission found that because of the merger between BellSouth and MCCA, BellSouth owned both the land line telephone company and the only RCCs providing paging services to the three markets involved. For that reason, the Commission found that it would be appropriate to allow another RCC applicant to enter those markets in order to insure fully effective competition among the carriers regulated by the Commission. The Commission stated that entry by an applicant into one of the three markets involved would not be a duplication of service as prohibited by T.C.A. § 65–30–105(f). Thus, the Commission approved the transfer of control to BellSouth upon the condition that

if an RCC applicant sought to enter any of the markets served by the four MCCA RCCs, then the Commission would be considered to have found that the existing services in that market were inadequate because there may not be fully effective competition between the carriers regulated by the Commission, and the public interests would be served by such competition. Numerous RCCs, including Dial–A–Page, have applied for authority to service the three markets involved. Pursuant to the Commission's June 30, 1988 order, the Commission Staff filed a motion for a declaratory ruling regarding whether the Commission may grant as many certificates in a given market as it finds qualified. After a hearing on the matter, the administrative judge issued an order finding that the RCC Act allows the Commission to grant only a single request for authority in the Memphis, Nashville, and Chattanooga markets where the Commission has found existing an inadequacy of service. The administrative judge relied on *Nashville Mobilphone Co. v. Atkins*, 536 S.W.2d 335 (Tenn.1976), in reaching this finding. The administrative judge states, "In summary, a fair, clear reading of the statute reflects that only a single applicant should be granted authority at any one time." On May 23, 1989 the Commission approved and adopted the findings and conclusions of the administrative judge as its own. By its order, the Commission declared that only a single grant of RCC authority would issue in each of the markets as a result of the pending applications for authority to serve the Memphis, Nashville and Chattanooga markets. Dial–A–Page appeals from this order asserting that the Commission should issue multiple grants of authority to serve those markets. Dial–A–Page argues that in reaching its decision the Commission has misinterpreted the RCC Act in a manner making it unconstitutional. We affirm the Commission's order.

I.

The Commission derives its authority to regulate RCCs from the RCC Act which states:

The commission shall have the power and jurisdiction to supervise and regulate every radio common carrier operating within this state ... so far as may be necessary to carry out the purposes of this chapter, and to do all things, whether herein specifically designated or in addition thereto, which are necessary or convenient in the exercise of such power and jurisdiction.

T.C.A. § 65–30–106(a). Thus, the Commission is bound to follow the RCC Act in regulating local RCCs. Dial–A–Page asserts that the Commission incorrectly interpreted the RCC Act in reaching its findings as stated in its order of May 23, 1989. However, we do not find that the Commission misinterpreted the RCC Act.

The Commission was first asked to interpret the RCC Act in connection with this action when BellSouth and MCCA sought the Commission's approval of the transfer of control of the certificates of public convenience and necessity of the four MCCA Tennessee subsidiaries pursuant to T.C.A. § 65–30–105 which provides:

No person or organization shall hereafter begin the construction, extension or operation of a radio common carrier system or acquire ownership or control thereof, without first obtaining from the commission a certificate that the present or future public convenience and necessity require or will require such construction, extension, operation or acquisition.

T.C.A. § 65–30–105(a). A hearing was held after which the Commission approved the transfer. However, the Commission included a condition in its order of approval. The RCC Act permits the Commission to include conditions in its orders of approval:

After such hearing, the commission may issue to the applicant a certificate of public convenience and necessity in a form to be prescribed by it or may refuse to issue the same or may issue it for only partial exercise of the privilege sought, or may attach to the exercise of the right granted by the certificate such terms, limitations and conditions which it deems the public interest may require.

T.C.A. § 65–30–105(d). The Commission correctly interpreted the RCC Act as giving it the authority to impose conditions in approving the transfer of control of certificates of public convenience and necessity. The condition included in the approval of the transfer of the certificates of public convenience and necessity from MCCA to BellSouth is stated by the Commission as follows:

> The Commission has the right to find and conclude that so long as BellSouth owns both the land line telephone company rendering service in a particular geographical area and the licensed radio common carrier offering service in that particular area, and to insure that there is fully effective competition between carriers regulated by this Commission, the Commission can conclude that an entry into that particular market by an applicant would not be a "duplication" of service in the certificated area of a common carrier as prohibited in T.C.A. § 65–30–105(f).

It is pursuant to this condition that numerous RCCs, including Dial–A–Page, applied for entry into the Nashville, Memphis, and Chattanooga markets. The condition imposed by the Commission was within the authority granted by the RCC Act, therefore we do not find that the Commission misinterpreted the RCC Act, by imposing a condition.

Regardless of whether the Commission had the authority to impose a condition, Dial–A–Page asserts that the Commission misinterpreted the RCC Act by imposing a condition that is not authorized by the Act. Dial–A–Page states that the Commission misinterpreted the RCC Act in limiting the issuance of grants of RCC authority to "an applicant" in an open market. Dial–A–Page reaches this premise by first asserting that MCCA's four Tennessee subsidiaries are no longer RCCs due to their acquisition by BellSouth, a land line telephone company. Dial–A–Page deduces that if MCCA's subsidiaries are no longer RCCs then the Memphis, Nashville, and Chattanooga markets must be considered open markets in which there is no existing RCC. Dial–A–Page asserts that the RCC

Act does not limit the grants of authority in an open market and the Commission misinterpreted the Act in its order of June 30, 1988 when it imposed a condition limiting the grant of authority to a single applicant.

Dial–A–Page correctly states that the only express limitation on the number of grants of authority in the RCC Act is found in T.C.A. § 65–30–105(f):

> The commission shall not grant a certificate for a proposed radio common carrier operation or extension thereof into the *established service area* which will be in competition with or duplication of any other certificated radio common carrier unless it shall first determine that the existing service is inadequate to meet the reasonable needs of the public and that the person, firm or corporation operating the same is unable to or refuses or neglects after hearing on reasonable notice to provide reasonably adequate service. (emphasis supplied)

The RCC Act allows the Commission to grant a certificate to an RCC applying for authority to operate in an established service area only after a determination that the existing service is inadequate and the provider of the existing service refuses or is unable to meet the public's need after a hearing on reasonable notice. Dial–A–Page asserts that pursuant to T.C.A. § 65–30–105(f) the RCC Act only limits the granting of certificates in established service areas and the Act does not limit the number of grants of authority in open markets. However, courts must give effect to every part of a statute in order to achieve the legislature's intent and a court must not construe a statute in a manner such that one section will conflict with another. See *City of Caryville v. Campbell County*, 660 S.W.2d 510 (Tenn.App.1983). The RCC Act states at T.C.A. § 65–30–105(c) that if a certificated RCC submits an application to extend its operations into a particular area which has no existing RCCs and which is contiguous with the area operated by the certificated RCC applicant, upon a showing of the need for RCC service, the Commission shall give a preference to the certifi-

cated RCC applicant to serve the contiguous area. Thus, if several RCCs apply for authority to operate in an area where there is no RCC service and it is shown that there is a need for RCC service, and if more than one RCC meets the requirements for certification, then the Commission shall give a preference to the certificated applicant that is already operating an RCC in a contiguous area. If the Commission were to authorize multiple grants of authority in open markets, as Dial–A–Page suggests, then T.C.A. § 65–30–105(c) requiring a preference be given to RCCs operating in a contiguous area would have no meaning. In interpreting any statute we must look at the language used by the legislature when read in the context of the entire statute and without any forced or subtle construction to limit or extend the import of the language. *See Worrall v. Kroger Co.,* 545 S.W.2d 736 (Tenn.1977). When we look at the entire RCC Act we find that the legislative intent was for the Commission to authorize a single grant of authority to one RCC at a time, regardless of whether the market is open or established. We find that the Commission did not misinterpret the RCC Act.

## II.

The second issue raised by Dial–A–Page is whether the RCC Act as interpreted by the Commission is unconstitutional.

## A.

Dial–A–Page first asserts that the RCC Act as interpreted by the Commission violates Article 1 § 22 of the Tennessee Constitution prohibiting monopolies. Dial–A–Page relies on *Checker Cab Co. v. City of Johnson City,* 187 Tenn. 622, 216 S.W.2d 335 (1948), for the assertion that the RCC Act provides for the granting of monopolies. In *Checker Cab* the Tennessee Supreme Court found that a private act regulating the operation of taxi cabs in Johnson City was unconstitutional. The act in question was similar to T.C.A. § 65–30–105(f) in that, except for those taxi cab operators who were entitled to a "grandfather certificate," the city was prohibited from issuing a certificate of public convenience and ne-

cessity to an applicant for the operation of taxi cabs until (1) there was a public hearing upon notice, (2) there was a finding that the additional taxi service was needed, and (3) the taxi cab operators presently servicing the city were given up to 60 days to provide the additional service before a new certificate was granted. *Id.* at 626, 216 S.W.2d at 336. In *Checker Cab* the appellants argued that the exclusive privilege granted by the private act to the holders of grandfather certificates was not a monopoly prohibited by the Tennessee Constitution because the privilege was granted by the legislature in the exercise of the police power of this State. The court held that "a monopoly cannot be validly created merely by connecting such creation with the exercise of a police power." *Id.* at 627, 216 S.W.2d at 337. However, none of the parties to this appeal claim that the RCC Act is valid merely as the result of legislature's exercise of the police power of the State.

The *Checker Cab* case does provide some helpful guidance regarding monopolies in Tennessee. In *Checker Cab* the court notes that the anti-monopoly clause of the State's constitution does not prohibit the legislature from granting a monopoly if such monopoly "has a reasonable tendency to aid in the promotion of the health, safety, morals and well being of the people. (citations omitted)" *Checker Cab* at 627, 216 S.W.2d at 337. Similarly, it has been held that the legislature may regulate activity which would otherwise be privately operated if the activity is related to the health, safety, morals or welfare of the public. *See State v. Spann,* 623 S.W.2d 272 (Tenn.1981). The test for determining whether the legislature has correctly exercised its police power in regulating an activity is · the rational basis test. If the legislature concludes that there is a reasonable basis for the regulatory statute and if there is some foundation in fact to justify the legislature's conclusion, then the court is powerless and may not substitute its judgment for that of the legislature. See *Chapdelaine v. Tennessee State Bd. of Examiners,* 541 S.W.2d 786 (Tenn.1976)

*appeal dismissed,* 429 U.S. 1033, 97 S.Ct. 724, 50 L.Ed.2d 744 (1977).

In determining whether the RCC Act meets the rational basis test we look to the policy behind the Act. The legislature states the policy behind the RCC Act in T.C.A. § 65–30–102. It is the policy of the RCC Act to provide fair regulation of RCCs and thereby (1) to promote adequate, economical and efficient RCC service, (2) to provide just and reasonable rates and charges for RCC service without unjust discrimination, undue preferences or advantages, or unfair or destructive competitive practices, (3) to promote harmony between RCCs and their subscribers, and (4) to cooperate with other states and the Federal Government in the regulation of RCCs in the public's interest. T.C.A. § 65–30–102. The policy stated in T.C.A. § 65–30–102 provides the rational basis for the legislature's exercise of its police power through the regulation of the RCC industry as provided in the RCC Act.

In effect, Dial–A–Page argues that the RCC Act does not pass the rational basis test for a number of reasons. Dial–A–Page asserts that the Tennessee Constitution adopts a policy of competition as expressive of the interests of the public, and the interests of the public are paramount to the policy of the RCC Act. Dial–A–Page has interpreted the RCC Act as prohibiting competition in the RCC industry and thereby hindering the adequate economical and efficient RCC service which the first policy of the Act promises to promote. However, Dial–A–Page has misinterpreted the RCC Act because the Act does not prohibit competition. The RCC Act merely limits the number of applicants that can be granted authority at one time in a particular area. The RCC Act does not limit the number of RCCs that can operate in a particular area provided each applicant meets the requirements for obtaining a certificate. *See* T.C.A. § 65–30–105. In addition, the RCC Act does not regulate land line telephone companies or the many private carriers in Tennessee which are in competition with state regulated RCCs.

Next, Dial–A–Page asserts that the policy to provide just and reasonable rates and charges for RCC service without unjust discrimination, undue preferences or advantages or unfair or destructive competitive practices cannot be upheld by an act limiting entry to only one carrier per market. Once again we note that Dial–A–Page has misunderstood the Commission's interpretation of the RCC Act which only limits the number of entries into the market at a single time rather than the number of total entries allowed.

Dial–A–Page asserts that, regarding the third policy, there is nothing in the record demonstrating that having more RCCs in a given market will discourage harmony between RCCs and their subscribers. However, there was testimony that allowing more than one applicant to enter the market at one time may promote "low balling" and other unfavorable trade practices. Similarly, we find nothing in the record to demonstrate that limiting the number of applicants entering the market at one time will discourage harmony between RCCs and their subscribers.

Regarding the fourth policy, Dial–A–Page argues that the RCC Act is in opposition to the revised policies of the Federal Communications Commission (FCC). However, T.C.A. § 65–30–105(g)(1) requires every applicant granted a certificate by the Commission to apply for and seek approval from the FCC. Thus, the RCC Act does cooperate with the Federal Government in the regulation of RCCs because every applicant is required to obtain approval from the FCC before it may begin operation in a particular market.

Dial–A–Page next asserts that the RCC Act as interpreted by the Commission cannot be found constitutional on the basis of the Supreme Court's holding in *Nashville Mobilphone Co. v. Atkins,* 536 S.W.2d 335 (Tenn.1976), because that case is not controlling. Dial–A–Page asserts that *Nashville Mobilphone* cannot be controlling because the industry has changed greatly in the years since that case was decided. The administrative judge relied on *Nashville Mobilphone* in his order and the Commis-

sion adopted the rationale behind the judge's order in its own order interpreting the RCC Act. Dial–A–Page states that *Nashville Mobilphone* is not controlling because the issue decided in that case was the proper construction of T.C.A. § 65–30–105(f) governing authority to operate in an established service area, whereas the issue before the court in the case *sub judice* is regarding authority to operate in an open market. However, having looked at the RCC Act as a whole, we have found that the legislature did not intend any difference between the number of RCCs that may be granted authority in an open market as opposed to an established market. The only difference in the regulation of applicants to the two types of markets is that in an open market a preference is given to an applicant who is already certificated in a contiguous area. Furthermore, Dial–A–Page's argument that the RCC Act, as interpreted by the Commission, is unconstitutional stems from T.C.A. § 65–30–105(f), which *Nashville Mobilphone* interpreted. The holding in Nashville Mobilphone does control in this case because the same considerations are at issue.

Dial–A–Page also asserts that *Nashville Mobilphone* cannot be controlling because the industry has changed greatly in the years since that case was decided. Although the industry has changed over the years, the purpose of the RCC Act as discussed by the court in *Nashville Mobilphone,* to protect the public interest by insuring adequate, efficient and economical RCC service and to prevent destructive competitive practices, has not changed. The Commission's interpretation of the RCC Act promotes the purpose of the Act as stated in *Nashville Mobilphone.* For example, an expert for the Commission testified that the start-up costs for each new RCC entering the three markets involved would be approximately $1,000,000 and the cost of the first year of operation would be as much as $1,000,000, as well. In addition, there is evidence that transmittal towers would be required every 20 to 30 miles to serve the territory. Thus, the failure of a paging operation could result in tremendous economic waste. RCCs already operating in an area may be able to extend their service to a contiguous area more efficiently and economically than an RCC entering the market from elsewhere. Similarly, an RCC that is given authority to expend money, time and effort in the installation and maintenance of operation ought to have some reasonable assurance that their efforts are not in vain because of countless other RCCs simultaneously granted authority to operate in the same area.

**B.**

The second constitutional issue raised by Dial–A–Page is whether T.C.A. § 65–30–105(c) granting a preference to existing RCCs to serve contiguous areas is unconstitutional. Dial–A–Page relies on the assumption that the preference is irrebuttable in asserting its unconstitutionality. However, if the preference were irrebuttable, then subsection (e) of T.C.A. § 65–30–105 would have no meaning. That section provides:

> (e) In determining whether a certificate shall be issued, the commission shall take into consideration, among other things, the public need for the proposed service or acquisition, the suitability of the applicant, the financial responsibility of the applicant, the ability of the applicant to perform efficiently the service for which authority is requested.

It is the court's duty to reconcile inconsistent provisions of a statute and construe a statute so that no part will be inoperative or insignificant. *See City of Caryville v. Campbell County,* 660 S.W.2d 510 (Tenn. App.1983). We find that the preference must be rebuttable, and it is only one factor to be considered in granting a certificate along with the factors listed in T.C.A. § 65–30–105(e).

Dial–A–Page asserts that T.C.A. § 65–30–105(c) is unconstitutional because it creates a closed class. However, if the consideration of whether an RCC serves a contiguous area is only one factor to be considered in determining whether a certificate shall be issued, then no closed class has been created because certificates may still be issued to applicants that are not operating in a contiguous area. We find that T.C.A. § 65–30–105(c) is constitutional and this issue is without merit.

Throughout this proceeding Dial–A–Page has asserted that this Court should find the RCC Act unconstitutional based on the fact that the RCC market has changed greatly since the Act was first adopted in 1972. It has been held that a statute may be valid as to one set of facts and may be invalid as to another, and a statute that was valid when it was enacted may become invalid by changed conditions. *Nashville C. & St. L. Ry. v. Walters,* 294 U.S. 405, 55 S.Ct. 486, 79 L.Ed. 949 (1935). We find that Dial–A–Page has misunderstood the Commission's interpretation of the Act to mean that only one RCC will be allowed to operate in certain areas all the time, but that is not the case for any area of the state. However, as the court stated in *Nashville Mobilphone:*

> This argument goes to the *merits and desirability* of the statute, a matter with which this Court officially has no legitimate concern. We do not second guess the Legislature. It is privileged to pass good laws, mediocre laws or poor laws. Our scrutiny is solely directed to their constitutionality. We take them as we find them and have neither the duty, nor the disposition, nor the inclination, nor the power to modify or mold them so as to meet our view of their merit.

Thus, it is the duty of the court to interpret statutes by looking at the legislature's intent and courts should not make changes simply because the court "thinks it can improve on the statutory scheme that congress enacted into law." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 578, 99 S.Ct. 2479, 2490, 61 L.Ed.2d 82 (1979). The question of whether the RCC Act is the best method of governing the RCC industry is an issue to be presented to the legislature.

We agree with the administrative judge's interpretation of the RCC Act as adopted by the Commission that "a fair reading of the statute reflects a clear and unambiguous intent to limit the applications for authority to one grant of authority at a time."

We find that the RCC Act is constitutional in that it creates a regulated monopoly the purpose of which is rationally related to the welfare of the public as stated in T.C.A. § 65–30–102.

We also find that the RCC Act allows a rebuttable preference in favor of existing RCCs in contiguous areas and this preference does not render the RCC Act unconstitutional as it is only one factor to be considered in the granting of certificates. We affirm the Commission's order. Costs are assessed to Dial–A–Page.

CRAWFORD and FARMER, JJ., concur.