AIRPORT INN, a limited partnership, and Watauga Inns, Inc., Plaintiffs-Appellants,

v.

The METROPOLITAN KNOXVILLE AIRPORT AUTHORITY, United American Bank, Trustee, and Knoxville Airport Hotel Company, Defendants-Appellees.

Court of Appeals of Tennessee, Eastern Section.

Dec. 4, 1981.

Permission to Appeal Denied by Supreme Court Feb. 16, 1982.

**950**

Courtney N. Pearre and H. Wynne James, III, Knoxville, for plaintiffs-appellants.

Frank R. Erickson, Franklin J. McVeigh, Wayne R. Kramer and W. F. Shumate, Jr., Knoxville, for defendants-appellees.

1. 42–4–103. *Definitions.*—The following words or terms whenever used or referred to in this chapter shall have the following respective meanings unless different meanings clearly appear from the context:

. . . .

(4) "Airport" shall mean and include any one or more airports or heliports and related facilities, including but not limited to, land and interests in land, facilities for storage of air and

## OPINION

FRANKS, Judge.

The ultimate issue on this appeal is whether hotel is included in "airport" as defined in T.C.A. 42–4–103(4).[1]

The Chancellor acting on motions for summary judgment filed by all parties, while purporting to hold Plaintiffs were without standing to question the authority of The Metropolitan Knoxville Airport Authority to issue $9,500,000 Revenue Bonds for financing construction of a hotel on airport property, actually concluded: "that the Defendant Authority was authorized and had the power and the right . . . to issue the bonds for the construction of the hotel on the Airport premises."

The pertinent facts are concisely stated in Appellants' brief:

In the fall of 1980 The Metropolitan Knoxville Airport Authority decided to finance the construction of a hotel on its premises through an issuance of tax free industrial development type bonds. Allegedly such a hotel would generate revenues for the MKAA, an airport facility faced with a declining number of passengers. The hotel would be leased to and operated by Knoxville Airport Hotel Company, a partnership. Hotel would then compete directly with the plaintiffs Airport Inn and Wautauga Inns, Inc., operators of a Quality Inn and Holiday Inn located directly across Alcoa Highway from Metropolitan Knoxville Airport. Both plaintiffs depend upon air travelers and air carrier employees for the generation of a substantial portion of their revenues. No other hotels in Blount or Knox Counties depend so heavily upon air pas-

space craft, navigation and landing aids, taxiways, pads, aprons, control towers, passenger and cargo terminal buildings, hangars, administration and office buildings, garages, parking lots, and such other structures, facilities and improvements necessary or convenient to the development and maintenance of airports and heliports, and for the promotion and accommodation of air and space travel, commerce and navigation.

sengers and air carrier employees for their revenues.

Although the defendants initially contemplated using an Industrial Development Corporation to issue the bonds, $9,500,000 of allegedly tax free bonds were issued through the "authority of *Tenn.Code Ann.* § 42–4–101 *et seq.*" Defendant United American Bank in Knoxville was named as trustee for the proceeds from the sale of the bonds, and construction commenced. This litigation was subsequently instituted.

Defendants insist Plaintiffs are without standing to maintain this action, and argue "this action is one brought by citizens and residents of Blount County with no special or peculiar interest to be protected and is merely an attempt to privately attack an alleged breach of public duty." Plaintiffs' complaint alleged a special injury[2] supported by affidavits with their motion for summary judgment which was not factually controverted by Defendants. Standing is a judicial doctrine requiring allegations and proof of special damage or injury to the party irrespective of the merits of the issue. *Curve Elementary School v. Lauderdale City School,* (Tenn.App.), 608 S.W.2d 855. Plaintiffs' action must be tested by the rule of standing quoted in *Sachs v. Shelby County Election Commission,* 525 S.W.2d 672 (Tenn.1975):

> "it is the settled law in this state that private citizens, as such, cannot maintain an action complaining of the wrongful acts of public officials unless such private citizens aver special interest or a special injury not common to the public generally. *Patton v. City of Chattanooga,* 108 Tenn. 197, 65 S.W. 414 (1901); *Skelton v. Barnett,* 190 Tenn. 70, 227 S.W.2d 774 (1950); *Badgett v. Broome,* 219 Tenn. 264, 409 S.W.2d 354 (1966)."

Plaintiffs have alleged facts of special interests and injuries not common to the public generally, *i.e.,* hotel operators competing for airport passengers and the ramifications flowing from the contested funding plan. Clearly the interest of the general public and Plaintiffs' alleged interest and injuries are not in common. Plaintiffs have standing to prosecute their action.

On the substantive issue Plaintiffs argue hotels cannot be constructed at airports under the Municipal Recovery and Post War Aid Act and this prohibition is applicable to the Metropolitan Airport Authority Act when the acts are constructed *in pari materia*; moreover, they insist "The Trial Court erred in liberally construing the Metropolitan Airport Authority Act to include 'Hotel' within the definition of 'Airport.'"

The Chancellor in his ruling fully considered and rejected these arguments. We adopt from his opinion:

> The Court further finds that the Defendant Authority was authorized and had the power and the right to enter into this lease arrangement and to issue the bonds for the construction of the hotel on the airport premises. In making this determination the Court looks to primarily the Metropolitan Airport Authority Statute, which the Court has heretofore alluded to, and the Court notes the extremely broad powers and authority set forth to an airport authority, and that throughout this act, from the preamble to the enacting clause, the general intent is that this Authority shall have the broadest of powers and not be limited by the requirements, restrictions, or procedural provisions contained in any other law or charter. That it is further set forth in Sec-

2. The injuries plead by plaintiffs were: (1) that the illegal issuance of bonds by defendant Metropolitan Knoxville Airport Authority allowed defendant Knoxville Airport Hotel Company to construct a hotel with funds upon which, because the interest on the bonds is ostensibly tax free, a lower rate of interest would be paid, thus giving Knoxville Airport Hotel Company an unlawful competitive advantage; and (2) that because of this unlawful competitive advantage, plaintiff Quality Inn Airport could not proceed with a planned expansion of its facility.

tion 42–4–114,[3] wherein again the Legislature declares that the powers of this Act deposed upon these authorities be in addition and supplemental to powers conferred by any other law, and not in substitution for such powers, and that these activities by these authorities are to be considered under these broad general powers so given.

The Plaintiffs raise the issue as to whether or not this hotel project is covered within the terms of this Act. It is true that the word "hotel" is nowhere contained in the Act, but when the Court `takes the Act from its four corners, the Court is constrained to find that the Legislature intended by these very broad powers to allow and to authorize this Authority to enter into the transaction which it did. The Court notes that by the definition contained in the Act of "airport", that it goes on and provides for structures, facilities, and improvements necessary or convenient to the development and maintenance of airports; and it further provides for the promotion and accomodation of air and space travel, commerce and navigation. Certainly the hotel facility on the grounds would have to be construed to be within the provisions of promotion and accomodations for travelers, for commerce, and for navigation. Additionally, wherein the special powers, which by the terms of the Act are not to be limited, but the special powers under Number 16, being Subhead 16 under 42–4–107,[4] provides that the Authority may contract with persons or corporations to provide goods and services for the use of employees and passengers of the carriers, and employees of the Authority, and necessary and incidental to the operation of the Airport.

This Court, as has heretofore been said, finds that this is certainly broad enough to include and does include the hotel. The provision for the issuance of bonds for the purposes of this Act—the Bonds were issued under the terms of the Act and for purposes for which the Court has found to be within the terms of the Act.

■ Taking into account the Legislature's directive to the Courts in construing the Act,[5] we affirm the foregoing determinations by the Chancellor and remand for entry of judgment consistent with this opinion.

Costs of appeal are assessed one-half to Appellant and one-half to Appellees.

PARROTT, P. J., and BYERS, Special Judge, concur.

**3.** 42–4–114. *Supplemental nature of chapter.* —The powers conferred by this chapter shall be in addition and supplemental to the powers conferred by any other law, and are not in substitution for such powers, and the limitations imposed by this chapter shall not affect such powers. The powers herein granted may be exercised without regard to requirements, restrictions or procedural provisions contained in any other law or charter, except as herein expressly provided. Any metropolitan government or any home rule municipality authorized hereunder to create a metropolitan airport authority may do so without the necessity of a charter amendment, notwithstanding anything in its charter to the contrary.

**4.** 42–4–107. *General powers.*—An authority shall have all powers necessary to accomplish the purposes of this chapter (excluding the power to levy and collect taxes and special assessments) including, but not limited to, the following:

. . . .

(16) To contract with persons or corporations to provide goods and services for the use of employees and passengers of the carriers and the employees of the authority, and necessary and incidental to the operation of the airport.

**5.** 42–4–115. *Construction—Chapter controlling.*—The provisions hereof shall be liberally construed to effect the purposes hereof, and insofar as the provisions of this chapter may be inconsistent with the provisions of any other law, the provisions of this chapter shall be controlling.