# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
July 10, 2019 Session

## TENNESSEE DEPARTMENT OF HEALTH ET AL. v. NORMA J. SPARKS

**Appeal from the Chancery Court for Davidson County**
No. 17-1064-III     Ellen H. Lyle, Chancellor

_____

## No. M2018-01317-COA-R3-CV;
## No. M2018-02113-COA-R3-CV

_____

The Department of Health reprimanded and issued civil penalties against a physician assistant for prescribing controlled substances under the supervision of a physician who lacked DEA registration, failing to register with the Controlled Substances Monitoring Database ("CSMD"), and failing to check the database prior to prescribing controlled substances. On a petition for review, the chancery court reversed the Department's decision. We conclude that the Department's interpretation of the Physician Assistants Act is contrary to law and improperly places the duty on the physician assistant to determine whether a supervising physician is in compliance with an unwritten requirement that the physician be registered with the DEA to be able to supervise a physician assistant who prescribes controlled substances. Furthermore, the record does not contain substantial and material evidence that the Department provided the physician assistant with the statutorily-required notice that either registration with the CSMD or checking with the CSMD was required. We affirm the decision of the chancery court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and RICHARD H. DINKINS, J., joined.

Herbert H. Slatery, III, Attorney General and Reporter, Andrée S. Blumstein, Solicitor General, Sue A. Sheldon, Senior Assistant Attorney General, for the appellant, State of Tennessee.

Charles K. Grant and Matthew F. Smith, Nashville, Tennessee, for the appellee, Norma J. Sparks.

Andrew Yarnell Beatty, Nashville, Tennessee, for the amicus curiae, Tennessee Medical Association.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Norma J. Sparks ("Sparks") is a physician assistant ("PA"), a type of physician extender authorized to practice medicine only under the supervision of a licensed physician. *See* Tenn. Code Ann. § 63-19-106(a)(1). Beginning in November 2010, Sparks worked as a physician assistant at Beersheba Springs Medical Clinic ("Clinic").[1] During the time period relevant to this case (November 13, 2014 through August 2016), Sparks's only supervising physician was H. Garrett Adams, M.D., a licensed physician in good standing in Tennessee. At all times relevant to this case, Sparks held a valid DEA ("Drug Enforcement Administration") registration. While serving as Sparks's supervising physician, Dr. Adams did not have a valid DEA registration and did not prescribe controlled substances. During the relevant time period, Sparks worked at the Clinic on Tuesdays and Thursdays. She worked at no other location as a physician assistant. While under Dr. Adams's supervision, Sparks wrote prescriptions for controlled substances on at least fifteen days in 2015 and at least fifteen days in 2016.

Sparks was not registered with the CSMD at any time until November 2016. According to her testimony, she never received notice from the State of the requirement to register with the CSMD, and the State has no record that it notified her of the need to register. Sparks first learned of the registration requirement in October 2016 at a continuing education course. She registered with the CSMD in November 2016 and has been registered since then.

On February 8, 2017, the Tennessee Department of Health's Division of Health Related Boards ("Department") filed a Notice of Charges and Memorandum for Assessment of Civil Penalties against Sparks ("Notice"). The Notice alleged that Sparks's actions violated the following statutory and regulatory provisions[2]:

> (1) Tenn. Code Ann. § 63-19-106 (requiring a PA to work under the supervision of a licensed physician);
> (2) Tenn. Code Ann. § 63-19-107(2)(A) (authorizing a supervising physician to delegate to PA authority to prescribe controlled substances);

---

[1] Beginning with this statement, the first two paragraphs of our factual summary are based upon the parties' stipulations of fact submitted prior to the administrative hearing before the Tennessee Board of Medical Examiners' Committee on Physician Assistants.

[2] The text of these statutes and regulations will be set forth below as relevant in the analysis section of the opinion.

(3) Tenn. Comp. R. & Regs. 0880-03-.02(1) (stating that services delegated to PA must "form a usual component of the supervising physician's scope of practice" and be provided under the physician's supervision);

(4) Tenn. Comp. R. & Regs. 0880-03-.21 (providing certain requirements for PA's authorized by their supervising physician to prescribe drugs);

(5) Tenn. Code Ann. § 63-19-107(2)(B)(i)-(ii) (requiring PA with authority from supervising physician to prescribe drugs to file with the Committee on Physician Assistants a notice including certain information; and prohibiting a PA from prescribing certain controlled substances unless specifically authorized by the formulary or expressly approved by the supervising physician);

(6) Tenn. Code Ann. § 63-19-106 (stating that services PA may provide shall be set forth in written protocol developed by supervising physician and PA and that protocol must meet described requirements);

(7) Tenn. Code Ann. § 53-10-305(a) (stating that healthcare practitioners who prescribe or dispense controlled substances on more than fifteen days in a calendar year and are required to have a DEA registration must register in the CSMD); and

(8) Tenn. Code Ann. § 53-10-310(e)(1) (requiring that healthcare practitioners check the CSMD before prescribing a controlled substance at the beginning of a new treatment episode and then at least annually when that controlled substance remains part of the treatment).

The Notice further stated that a contested case hearing would be conducted before the Tennessee Board of Medical Examiners' Committee on Physician Assistants ("Committee") to determine whether Sparks violated the provisions identified in the Notice and the amount of any civil penalties to be assessed against her.

The Committee heard the contested case on July 10, 2017. In its final order entered on August 15, 2017, the Committee concluded that Sparks violated the following provisions: Tenn. Code Ann. § 63-19-107(2)(A) and Tenn. Comp. R. & Regs. 0880-03-.02(1); and Tenn. Code Ann. §§ 53-10-305(a) and -310(e)(1). The Committee reprimanded Sparks and ordered her to pay a civil penalty for each of the following three violations:

- Prescribing controlled substances under the supervision of a physician who did not have a DEA registration and for whom prescribing controlled substances was not a usual component of his regular scope of practice
- Failing to register for the CSMD despite being legally required to do so

- Failing to check the CSMD before prescribing controlled substances at the initiation of the new course of treatment for some patients

Each civil penalty was a Type B civil penalty in the amount of $500.00, resulting in a total civil penalty of $1500.00. The Committee also assessed Sparks with $2500.00 in costs, the maximum amount allowable. The Board of Medical Examiners ("Board") ratified the Committee's decision, which became effective on August 15, 2017.

Sparks filed a petition for judicial review in chancery court on October 2, 2017. In a memorandum and order filed on June 21, 2018, the trial court granted Sparks's petition for review and reversed the administrative decision.

The Department appeals, raising the following issues: whether the trial court erred in (1) reversing the decision of the licensing agencies that Sparks violated the Physician Assistants Act by prescribing controlled substances without the statutorily-required authorization; (2) reversing the decision of the licensing agencies that Sparks violated Tenn. Code Ann. §§ 53-10-305(a) and 53-10-310(e)(1) when she failed to register for the CSMD and failed to check the CSMD before prescribing controlled substances; and awarding Sparks attorney fees and costs under Tenn. Code Ann. § 4-5-325. Sparks raises three additional issues: (1) whether the Department's unwritten requirement that a supervising physician register with the DEA is unconstitutionally vague; (2) whether the Board and the Committee acted in excess of their statutory authority when Sparks was disciplined on the basis of violations outside of the Board's and the Committee's statutes and regulations; and (3) whether the administrative law judge committed reversible error in disallowing Sparks's expert witnesses from testifying.

STANDARD OF REVIEW

Tennessee Code Annotated section 4-5-322(h) sets forth the standards that govern our review of cases brought under the provisions of the Uniform Administrative Procedures Act ("UAPA"). *See Coal Creek Co. v. Anderson Cnty.*, 546 S.W.3d 87, 97-98 (Tenn. Ct. App. 2017). Tennessee Code Annotated section 4-5-322(h) states:

The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

- 4 -

(5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.

(B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Under the UAPA, this Court must apply the substantial and material evidence standard to the agency's factual findings. *City of Memphis v. Civil Serv. Comm'n*, 239 S.W.3d 202, 207 (Tenn. Ct. App. 2007). "Substantial and material evidence is 'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" *Macon v. Shelby Cnty. Gov't Civil Serv. Merit Bd.*, 309 S.W.3d 504, 508 (Tenn. Ct. App. 2009) (quoting *Pruitt v. City of Memphis*, No. W2004-01771-COA-R3-CV, 2005 WL 2043542, at *7 (Tenn. Ct. App. Aug. 24, 2005)). It is "'something less than a preponderance of the evidence, but more than a scintilla or glimmer.'" *Id.* (quoting *Wayne Cnty. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App.1988)).

The UAPA's narrow standard of review for an administrative body's factual determinations "suggests that, unlike other civil appeals, the courts should be less confident that their judgment is preferable to that of the agency." *Wayne Cnty.*, 756 S.W.2d at 279. This court cannot displace the agency's judgment as to the weight of the evidence even where there is evidence that could support a different result. *Id.*

ANALYSIS

I. Physician Assistants Act.

The Department takes the position that Sparks violated Tenn. Code Ann. § 63-19-107(2)(A) and Tenn. Comp. R. & Regs. 0880-03-.02(1) when she prescribed controlled substances under the supervision of a physician who did not have a DEA registration and who did not prescribe controlled substances as a usual component of his scope of practice. During the relevant period, Tenn. Code Ann. § 63-19-107(2)(A), part of the Physician Assistant Act, provided as follows:

In accordance with rules adopted by the board and the committee, a supervising physician may delegate to a physician assistant working under the physician's supervision the authority to prescribe and/or issue legend drugs and controlled substances listed in Schedules II, III, IV, and V of title 39, chapter 17, part 4. The rules adopted prior to March 19, 1999, by the board and the committee governing the prescribing of legend drugs by physician assistants shall remain effective after March 19, 1999, and may be revised from time to time as deemed appropriate by the board and the

committee. The board and the committee may adopt additional rules governing the prescribing of controlled substances by physician assistants. A physician assistant to whom is delegated the authority to prescribe and/or issue controlled substances must register and comply with all applicable requirements of the drug enforcement administration.

The regulations regarding "scope of practice" associated with the Physician Assistants Act provide as follows:

A physician assistant who holds state license in accordance with T.C.A. § 63-19-105 may provide selected medical/surgical services as outlined in a written protocol according to T.C.A. § 63-19-106, and when such services are within his skills. The services delegated to the physician assistant must form a usual component of the supervising physician's scope of practice. Services rendered by the physician assistant must be provided under the supervision, direction, and ultimate responsibility of a licensed physician accountable to the Board of Medical Examiners or the Board of Osteopathic Examination under the provision of T.C.A. § 63-19-109.

TENN. COMP. R. & REGS. 0880-03-.02(1). The Department asserts that the authority to perform medical services must be delegated to a physician assistant by his or her supervising physician and that a physician who has no authority to prescribe controlled substances cannot delegate such authority to a physician assistant. Sparks argues that the Department disciplined her for violating an unwritten requirement and that a committee composed of physician assistants is not competent to determine a physician's usual scope of practice. She interprets the statute to mean that the supervising physician delegates to the PA his or her general prescriptive authority, which includes the ability to prescribe controlled substances if the PA registers with the DEA.

As the Department points out, this court must defer to an administrative agency's "interpretation of its own rules because the agency possesses special knowledge, expertise, and experience with regard to the subject matter of the rule." *Pickard v. Tenn. Water Quality Control Bd.*, 424 S.W.3d 511, 522 (Tenn. 2013) (citing *Jackson Exp., Inc. v. Tenn. Pub. Serv. Comm'n,* 679 S.W.2d 942, 945 (Tenn. 1984)). An administrative agency's construction "of its own rules has 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *Id.* (quoting *BellSouth Adver. & Publ'g Corp. v. Tenn. Regulatory Auth.,* 79 S.W.3d 506, 514 (Tenn. 2002)). With respect to an agency's controlling statutes, however, the agency's interpretation is a question of law subject to de novo review. *Id.* at 523. Although an agency's interpretation of its controlling statutes is "'entitled to consideration and respect,'" especially as to "'doubtful or ambiguous statutes,'" the agency's interpretation is not binding on the courts. *Id.* (quoting *Nashville Mobilphone Co. v. Atkins*, 536 S.W.2d 335, 340 (Tenn. 1976)).

With respect to the proper interpretation of the Physician Assistants Act, Tenn. Code Ann. §§ 63-19-101–115, and the regulation at issue in this case, we find ourselves in agreement with the reasoning of the trial court. The trial court made the following statement regarding the Department's interpretation of the operative statute and regulation:

> The Department's construction and interpretation as a matter of law in this case is that the Petitioner violated Tenn. Code Ann. § 63-19-107(2)(A) and Tenn. Comp. R. & Regs. 0880-03-.02(1) by "prescribing controlled substances under the supervision of a physician who did not have a DEA registration and for whom prescribing controlled substances was not a usual component of his regular scope of practice. . ." The Department argues that implicit in this construction and application of Tenn. Code Ann. § 63-19-107(2)(A) and Tenn. Comp. R. & Regs. 0880-03-.02(1) is that it was the Petitioner's duty and obligation to (1) know whether or not their supervising physician possesses a valid DEA registration before prescribing any controlled substances; and (2) know that the prescribing of controlled substances forms a usual component of the supervising physician's scope of practice.

(Citations to administrative record omitted).

The trial court went on to conclude that the Department's construction of the Physician Assistants Act and regulations was erroneous as a matter of law because the Department's position "improperly places the duty on the physician assistant to ensure compliance by the supervising physician of an unwritten requirement." The trial court determined that such a framework was "inconsistent with the statutory scheme of the Physician Assistants Act which . . . places the responsibility for the services rendered by a physician assistant on the supervising physician."

As the basis for its statutory construction, the trial court began by citing Tenn. Code Ann. § 63-19-106, which, during the relevant time period, stated that a physician assistant was "authorized to perform selected medical services only under the supervision of a licensed physician." Tenn. Code Ann. § 63-19-107(a)(1). The court then noted that, pursuant to Tenn. Code Ann. § 63-19-107(2)(A), a supervising physician may delegate the authority to prescribe controlled substances. The trial court further stated: "It is further undisputed that there is no specific statute or regulation which states explicitly that a supervising physician must possess a DEA registration in order for the physician assistant to be able to prescribe controlled substances." In a footnote, the court referenced Tenn. Comp. R. & Regs. 0880-02-.18, detailing the requirements applicable to

a supervising physician, where there is no mention of DEA registration.[3]  The Physician Assistants Act mentions DEA registration only with respect to a physician assistant, not with respect to a supervising physician.  *See* Tenn. Code Ann. § 63-19-107(2)(A) ("A physician assistant to whom is delegated the authority to prescribe and/or issue controlled substances must register and comply with all applicable requirements of the drug enforcement administration.").

As the trial court pointed out, the Committee (and the Board) have the authority pursuant to Tenn. Code Ann. § 63-19-107(2)(A) to promulgate additional rules concerning the prescribing of controlled substances by physician assistants.  Moreover, Tenn. Code Ann. § 63-19-104(a)(1) gives the Committee the duty to promulgate "all rules that are reasonably necessary for the performance of the duties of the physician assistants, including, but not limited to, rules that specify the acts and offenses that subject the license holder to disciplinary action by the committee pursuant to subdivision (a)(7)."   Nevertheless, the relevant statutes and regulations are silent as to any requirement that a supervising physician possess a DEA registration before he or she may delegate the authority to a physician assistant to prescribe controlled substances.  It is also significant that the statutes and regulations requiring a physician assistant to inform the Committee about his or her supervising physician and to update the Committee concerning any changes, Tenn. Code Ann. §§ 63-19-107(1)[4] and (2)(B)(i) and Tenn. Comp. R. & Regs. 0880-03-.10(3),[5] do not require the physician assistant to state whether the supervising physician possesses a valid DEA registration.  The trial court gleaned from the silence of the statutes and regulations regarding any requirement that a supervising physician have a valid DEA registration in order to be able to delegate authority to a PA to prescribe controlled substances an indication "that the Legislature and the Board did not intend for this to be a requirement."

---

[3] Tenn. Comp. R. & Regs. 0880-03-.21, entitled "Prescription Writing," does not instruct a physician assistant to ensure that her supervising physician has a valid DEA registration prior to writing a prescription for a controlled substance.

[4] At all relevant times, Tenn. Code Ann. § 63-19-107(1) stated, in pertinent part:

> Each physician assistant shall notify the committee of the name, address and license number of the physician assistants' primary supervising physician and shall notify the committee of any change in such primary supervising physician within fifteen (15) days of the change. The number of physician assistants for whom a physician may serve as the supervising physician shall be determined by the physician at the practice level, consistent with good medical practice.

[5] Tenn. Comp. R. & Regs. 0880-03-.10(3) provides: "Each physician assistant shall have a designated primary supervising physician and shall notify the Committee of the name, address, and license number of his/her primary supervising physician and shall notify the Committee of any change in such primary supervising physician within fifteen (15) days of the change."

It is not consistent with the statutory scheme in place during the relevant time period (which is similar to the statutory scheme in place today) for a PA to be held responsible for his or her supervising physician's failure to comply with a statutory or regulatory requirement. Rather, the Physician Assistants Act and the General Rules Governing the Practice of Physician Assistants make the supervising physician ultimately responsible for the actions of the physician assistant. During the relevant time period, Tenn. Code Ann. § 63-19-106 stated, in pertinent part:

(a) A physician assistant is authorized to perform selected medical services *only under the supervision of a licensed physician*.
(1) *Supervision requires active and continuous overview of the physician assistant's activities to ensure that the physician's directions and advice are in fact implemented*, but does not require the continuous and constant physical presence of the supervising physician. The board and the committee shall adopt, by September 19, 1999, regulations governing the supervising physician's personal review of historical, physical and therapeutic data contained in the charts of patients examined by the physician assistant.
(2) The range of services that may be provided by a physician assistant shall be set forth in a written protocol, jointly developed by the supervising physician and the physician assistant. The protocol shall also contain a discussion of the problems and conditions likely to be encountered by the physician assistant and the appropriate treatment for these problems and conditions. The physician assistant shall maintain the protocol at the physician assistant's practice location and shall make the protocol available upon request by the board of medical examiners, the committee on physician assistants or the authorized agents of the board or the committee.
(3) A physician assistant may perform only those tasks that are within the physician assistant's range of skills and competence, that are within the usual scope of practice of the supervising physician and that are consistent with the protection of the health and well-being of the patients.
(4) The physician assistant may render emergency medical service in accordance with guidelines previously established by the supervising physician pending the arrival of a responsible physician in cases where immediate diagnosis and treatment are necessary to avoid disability or death.
(b) *A physician assistant shall function only under the control and responsibility of a licensed physician.* The supervisory physician has complete and absolute authority over any action of the physician assistant.[6] There shall, at all times, be a physician who is answerable for the actions of the physician assistant and who has the duty of assuring that there is proper

---

[6] This sentence was deleted effective July 1, 2015.

supervision and control of the physician assistant and that the assistant's activities are otherwise appropriate.

(Emphasis added); *see also* Tenn. Code Ann. § 63-19-107 (2016 and 2017).[7] As the trial court pointed out, the statutory provision that the Department found Sparks violated, Tenn. Code Ann. § 63-19-107, begins with the following sentence: "A licensed physician supervising physician assistants shall comply with the following practices." This, too, is consistent with the idea that the duty of compliance rests ultimately with the supervising physician. So is the following statement in the regulations: "Services rendered by the physician assistant must be provided under the supervision, direction, and ultimate responsibility of a licensed physician accountable to the Board of Medical Examiners . . . ." TENN. COMP. R. & REGS. 0880-03-.02(1). Furthermore, our Supreme Court has held that a supervising physician who delegates responsibilities to a physician assistant acts as the principal and the physician assistant acts as the agent. *See Cox v. M.A. Primary & Urgent Care Clinic*, 313 S.W.3d 240, 253-54 (Tenn. 2010).

Based upon the statutory and regulatory framework and relevant caselaw, we agree with the conclusion reached by the trial court that, "to the extent the Petitioner inadvertently prescribed controlled substances without the appropriate delegated authority because her supervising physician did not possess a DEA registration, the error, if any, would be with the supervising physician." Similarly, the determination of whether the prescribing of controlled substances was part of Dr. Adams's usual scope of practice and the duty of compliance rest with the supervising physician.

Thus, we affirm the trial court's decision reversing the Committee's DEA charges for violations of Tenn. Code Ann. § 63-19-107(2)(A) and Tenn. Comp. R. & Regs. 0880-03-.02(1). The related issues raised by Sparks—concerning vagueness, exclusion of constitutional arguments, and exclusion of expert testimony—are pretermitted.

---

[7] Tennessee Code Annotated section 63-19-107(2) provides, in pertinent part:

> (B)(i) A physician assistant to whom the authority to prescribe legend drugs and controlled substances has been delegated by the supervising physician shall file a notice with the committee containing the name of the physician assistant, the name of the licensed physician having supervision, control and responsibility for prescriptive services rendered by the physician assistant and a copy of the formulary describing the categories of legend drugs and controlled substances to be prescribed and/or issued, by the physician assistant. The physician assistant shall be responsible for updating this information;
>
> . . . .
>
> (F) No drugs shall be dispensed by a physician assistant except under the supervision, control and responsibility of the supervising physician.

II. Controlled Substances Monitoring Database.

In its final order, the Department determined that Sparks violated Tenn. Code Ann. §§ 53-10-305(a)[8] and -310(e)[9] by failing to register with the CSMD and failing to check the CSMD before prescribing controlled substances. Sparks does not dispute that Tennessee law does (and did), in fact, require PAs to register with the CSMD and to check the database before writing prescriptions for controlled substances. Rather, she asserts, and the trial court agreed, that the Department failed to provide her with the statutorily-required notice before enforcing these requirements against her. On appeal,

---

[8] Tennessee Code Annotated section 53-10-305(a) (2015 and 2016) stated, in pertinent part, as follows:

> All prescribers with DEA numbers who prescribe controlled substances and dispensers in practice providing direct care to patients in Tennessee for more than fifteen (15) calendar days per year shall be registered in the controlled substance database. New licensees shall have up to thirty (30) calendar days after notification of licensure to register in the database.

Effective April 27, 2016, Tenn. Code Ann. § 53-10-305(a) provided, in pertinent part:

> All healthcare practitioners who prescribe or dispense controlled substances in practice providing direct care to patients in this state by prescribing or dispensing on more than fifteen (15) days in a calendar year total and are required to have a federal drug enforcement administration (DEA) registration pursuant to federal law shall be registered in the controlled substance database. Healthcare practitioners or their agents shall have up to thirty (30) calendar days after receiving a DEA number to register in the database; such privilege shall apply equally to both prescribers and dispensers.

[9] Tennessee Code Annotated section 53-10-310(e)(1) (2016) stated:

> All prescribers or their designated healthcare practitioner's extenders, unless otherwise exempted under this part, shall check the controlled substance database prior to prescribing one of the controlled substances identified in subdivision (e)(3) to a human patient at the beginning of a new episode of treatment and shall check the controlled substance database for that human patient at least annually when that prescribed controlled substance remains part of the treatment.

Effective April 27, 2016, Tenn. Code Ann. § 53-10-310(e)(1) stated, in pertinent part:

> When prescribing a controlled substance, all healthcare practitioners, unless otherwise exempted under this part, shall check the controlled substance database prior to prescribing one (1) of the controlled substances identified in subdivision (e)(4) to a human patient at the beginning of a new episode of treatment and shall check the controlled substance database for that human patient at least annually when that prescribed controlled substance remains part of the treatment. An authorized healthcare practitioner's delegate may check the controlled substance database on behalf of the healthcare practitioner.

the Department argues that the trial court erred in concluding that (1) the record lacked substantial and material evidence that Sparks had notice that she was required to check the CSMD, and (2) Tenn. Code Ann. § 63-1-139(b) places a duty upon the Department to provide written notification to Sparks of changes in the law, a duty it argues to be in derogation of the general presumption that people know the law.

We start with Tenn. Code Ann. § 63-1-139(b), which provides as follows:

Each board, commission, committee, agency or other governmental entity created pursuant to this title, title 68, chapter 24 and title 68, chapter 140, part 3 *shall notify each holder of a license, certification or registration from the board, commission, committee, agency or other governmental entity of changes in state law that impact the holder and are implemented or enforced by the entity*, including newly promulgated or amended statutes, rules, policies and guidelines, upon the issuance and upon each renewal of the holder's license, certification or registration.

(Emphasis added). This language unambiguously requires the Department to notify physician assistants of changes in state law that impact them and "are implemented or enforced" by the Department. Tenn. Code Ann. § 63-1-139(b). The Department does not dispute the notice requirement, but it asserts that Sparks had actual knowledge of her obligation to check the CSMD before prescribing controlled substances and, thus, the Department was not required to provide notice. We disagree.

We note, first, that the Department cites no authority for the proposition that actual notice would excuse it from its statutory obligation to provide notice. Moreover, there is no substantial and material evidence in the record that Sparks had actual notice during the relevant time period. In support of its actual notice argument, the Department cites the following testimony:

MR. NAVA [Committee member]: And during this time that you were relying on your colleague to help you check people when she was on duty on Thursday, did you ever have a discussion with your colleague or with your supervising physician as to "I can only check this database when my colleague is on duty, but I can't check it when I'm on duty"? Did that discussion ever come up?
THE WITNESS [Sparks]: No, because if something came up, I just didn't write for anything if I couldn't check it. If I was suspicious or it needed to be more than a seven-day course, I just did not write it.

Earlier in the hearing, Sparks testified as follows:

- 12 -

Q. When did you become aware of the Tennessee Controlled Substance Monitoring Database?

A. When Linda [Hobbs] and I talked about it—well, when she would be there, if we had a suspicious patient, we would go on and pull them up, or if we had someone that we thought might need some repeat prescription for some narcotics.

Q. Okay. So on the days she was working—

A. She would check it, but she didn't—at that time, I guess she didn't think about it. We didn't talk about the fact that we were required to be registered.

. . . .

Q. But since then, you've now learned that whenever you initiate somebody on a course of controlled substance medication, you are supposed to check the CSMD first, correct?

A. Only if it's more than a seven-day supply.

Q. Fair enough. . . .

We consider this testimony insufficient to establish that Sparks had actual notice during the relevant time period that she was required to register with the CSMD and to check the database prior to prescribing controlled substances.

The parties stipulated at the contested case hearing that Sparks testified she never received notice from the State of the requirement to register with the CSMD.[10] This was also a finding of fact in the Committee's final order approved by the Board. The Department provided no proof that it notified Sparks of the need to register with the CSMD. The parties also stipulated that Sparks learned of the requirement to register with the CSMD in October 2016 at a continuing education course. At the hearing, the Department submitted into evidence a letter sent to all physician assistants in May 2015 entitled "Requirement to Identify Supervising Physician in CSMD," which includes the following language:

> *If you are required to register in the CSMD*, you must enter your supervising physician's driver's license number into the CSMD. Once entered, your supervising physician must approve the supervisory relationship. Failure to enter and approve this relationship by <u>June 15, 2015</u> will result in the supervisee's inability to properly access the CSMD. . . .
>
> A recent rule change promulgated pursuant to Public Chapter 898 (2014) requires all physician assistant prescribers to identify their supervising physician by entering that physician's driver's license number into the CSMD. If you have not already obtained your supervising physician's

---

[10] Sparks also testified to this fact at the contested case hearing.

driver's license number and entered that information into the CSMD, you are advised to do so immediately.

(Emphasis added). We do not consider this letter to constitute substantial and material evidence of notice to Sparks for two reasons. First, the parties stipulated that Sparks had no notice.[11] Second, the letter uses the language "if you are required to register with the CSMD." It does not provide notice that physician assistants are now required to register with the CSMD and to check with the database before prescribing controlled substances.

The Department had the burden of proof to establish that Sparks violated the CSMD requirements. The record does not contain substantial and material evidence to support a finding that Sparks had notice during the relevant time period that she was required to register with the CSMD and check with the CSMD before prescribing controlled substances. The remaining arguments are pretermitted. We affirm the trial court's decision reversing the Department's determination regarding the CSMD charges.

III. Attorney Fees.

The Department argues that, even if this court affirms the June 21, 2018 judgment of the trial court, we should reverse the trial court's September 10, 2018 order awarding attorney fees and costs to Sparks pursuant to Tenn. Code Ann. § 4-5-325. More specifically, the Department asserts that Sparks failed to establish that the charges brought against her by the Department were not well-grounded in fact and not warranted by existing law as required under Tenn. Code Ann. § 4-5-325. We respectfully disagree.

The language of Tenn. Code Ann. § 4-5-325 is as follows:

(a) When a state agency issues a citation to a person, local governmental entity, board or commission for the violation of a rule, regulation or statute and such citation results in a contested case hearing, at the conclusion of such hearing, the hearing officer or administrative law judge may order such agency to pay to the party issued a citation the amount of reasonable expenses incurred because of such citation, including a reasonable attorney's fee, if such officer or judge finds that the citation was issued:
(1) Even though, to the best of such agency's knowledge, information and belief formed after reasonable inquiry, *the violation was not well grounded in fact and was not warranted by existing law, rule or regulation*; or
(2) For an improper purpose such as to harass, to cause unnecessary delay or cause needless expense to the party cited.

---

[11] In light of the specific requirement in Tenn. Code Ann. § 63-1-139(b) that the Committee notify PA's of changes in the law, we consider the Department's reliance on the general presumption that people know the law to be misplaced.

- 14 -

(b) If a final decision in a contested case hearing results in the party issued a citation seeking judicial review pursuant to § 4-5-322, the judge, at the conclusion of the hearing, may make the same findings and enter the same order as permitted the hearing officer or administrative law judge pursuant to subsection (a).

(Emphasis added). In its order awarding attorney fees, the trial court found that "the allegations in the Notice of Charges and the administrative decisions flowing therefrom were not well-grounded in fact and were not warranted by existing law, rule, or regulations." On appeal, the Department takes the position that the trial court erred in making this finding and awarding attorney fees.

On the issue of whether the charges were well-grounded in fact, the Department's argument is that the parties stipulated to the facts supporting the charges against her. The relevant question, however, is whether the Department established facts, by stipulation or otherwise, sufficient to prove a violation of the law. *See Tenn. Dep't of Health & Div. of Health Related Bds. v. Chary*, No. M2012-00866-COA-R3-CV, 2013 WL 1576251, at *4 (Tenn. Ct. App. Apr. 12, 2013) (finding insufficient evidence and, therefore, concluding that charge was not well-grounded in fact). In the present case, as discussed above, the facts were not sufficient for the Department to charge Sparks with a violation.

As to whether the charges were warranted under the law, the Department emphasizes that the charges must be unwarranted "by *existing* law, rule or regulation." Tenn. Code Ann. § 4-5-325 (emphasis added). The Department invokes the deference normally afforded by the courts to the Department's interpretation of its governing law and argues that the charges were justified under the law as understood prior to the trial court's decision. For the reasons discussed above, however, we consider our construction of the relevant laws and regulations to be more consistent with the underlying purposes of the Physician Assistants Act than the interpretation supported by the Department in this case. The Physician Assistants Act does not include a requirement that a supervising physician be registered with the DEA. Moreover, the statutes governing health-related boards require them to give notice of changes in the applicable laws prior to bringing charges for enforcement.

We find no merit in the Department's attorney fees argument.

CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Tennessee Department of Health, Board of Medical Examiners, Committee on Physician Assistants, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE